IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **ALBERT G. HILL, III ,**<br><br>    Plaintiff,<br><br>vs.<br><br>**CRAIG WATKINS, ALBERT G. HILL, JR., LYDA HILL, ALINDA WILKERT, LISA BLUE BARON, CHARLA ALDOUS, STEPHEN MALOUF, MICHAEL LYNN, JEFFREY TILLOTSON, DONNA STRITTMATTER, STEPHANIE MARTIN, TERRI MOORE, HOYT HOFFMAN, MO BROWN, RANDALL THOMPSON, EDITH SANTOS, DAVID PICKET, ALBERT HILL TRUST, TY MILLER, and BRANCH BANKING & TRUST COMPANY,**<br><br>    Defendants | Case No. 3:17-cv-494 |

## ORIGINAL COMPLAINT

NOW COMES the Plaintiff, Albert G. Hill, III alleging as follows based on information and belief:

### INTRODUCTION

1. On February 21, 2013, the Highland Park Police Department responded to a residential burglary alarm and discovered four investigators and a prosecutor from the Dallas County District Attorney's Office had broken into the home of Albert G. Hill III and Erin N. Hill. The local police did not intervene because the investigators said they entered the home pursuant

- 1 -

to a search warrant, but in reality the investigators had no search warrant. Instead, the investigators entered the home at the personal direction of then-District Attorney Craig Watkins.

2. Mr. Hill might have never learned about the break-in but for the fact that a friend's wife witnessed the event and notified Mr. Hill, who then began asking questions of local police. Mr. Hill discovered that Mr. Watkins had used the investigators as an armed goon squad to solve a burgeoning legal and political problem. To wit, Mr. Watkins had been bribed by some of Mr. Hill's family members and their cohorts to frame Mr. Hill and ensure his defeat in various ongoing civil lawsuits in state and federal court, but that scheme was beginning to unravel and Mr. Watkins was desperate to cover his tracks.

3. In exchange for the bribes, Mr. Watkins had already obtained indictments of the Hills on March 31, 2011 on bogus charges of mortgage fraud. The criminal case was falling apart, however, and by February 14, 2013 a state district judge sought to compel Mr. Watkins's testimony about his malicious prosecution of the Hills. Mr. Watkins refused to testify, and the state court ordered him to appear again on March 7, 2013. Mr. Watkins sent his investigators into the Hill's home on February 21, 2013 in a desperate (but unsuccessful) attempt to gain leverage against the Hills before that March 7, 2013 hearing. A video surveillance recorder was stolen from the home by Mr. Watkins's goons, and its location is unknown to this day. The state court dismissed all charges against Mr. Hill on March 7, 2013 because of egregious misconduct by Mr. Watkins and his staff, but prosecutors appealed and those appeals are still pending. Mr. Watkin's former chief investigator, meanwhile, was wiretapped by the FBI and pleaded guilty to accepting a $200,000.00 bribe in another case. (The former chief investigator, Anthony L. Robinson, is now cooperating in the FBI's investigation of widespread public corruption in Mr. Watkins's office and throughout the Dallas County Courthouse.)

4.      Mr. Watkins's crimes were, unfortunately, only a small segment in a series of crimes. In 2009, at the age of 39, Mr. Hill learned that his great-grandfather, H.L. Hunt, Jr., had established a trust for Mr. Hill four days after Mr. Hill was born. Mr. Hill was the first great-grandchild of Mr. Hunt, a billionaire and one of the wealthiest men in the United States, and Mr. Hunt bequeathed most of his assets into the trust for Mr. Hill. After Mr. Hunt's death in 1974, and after Mr. Hill's relatives learned that most of Mr. Hunt's fortune would go to Mr. Hill, they began parceling up Mr. Hunt's fortune among themselves, acting as if Mr. Hill's birth trust did not exist. When Mr. Hill learned about the birth trust in 2009, his own father (and other relatives) launched a scorched-earth legal and political campaign to discredit and destroy Mr. Hill lest he recover some of the billions that they had stolen. Among other things, Mr. Hill's relatives and their allies lavished millions of dollars on socialites, opinion-makers, and public officials in Dallas, including Mr. Watkins, in an effort to protect themselves from the consequences of their crimes. This was not surprising, as Mr. Hill's family members have lied, cheated, and bribed their way out of trouble for decades. Mr. and Mrs. Hill moved to Atlanta to get away from the harassment and political corruption in Dallas, but the reign of terror continues to this day, so Mr. Hill has filed this case to put an end to it.

## JURISDICTION AND VENUE

5.      The Court has diversity jurisdiction under 28 U.S. Code § 1332 because the Plaintiff resides in Georgia and the Defendants reside in other states, and the amount in controversy exceeds $75,000.00. Venue is proper in the Northern District of Texas because most of the Defendants reside in Dallas County, and most of the events relevant to this lawsuit occurred in Dallas County.

## PARTIES

6.  Plaintiff Albert G. Hill III (hereinafter "Al III") is a resident of Atlanta, Georgia.

7.  Defendant Craig Watkins is a resident of Dallas County, Texas and the former District Attorney of Dallas County.

8.  Defendant Albert G. Hill, Jr. (hereinafter "Junior") is a resident of Dallas County, Texas and the father of Al III.

9.  Defendant Lyda Hill is a resident of Dallas County, Texas. She is the sister of Junior and the aunt of Al III.

10. Defendant Alinda Wilkert is a resident of Dallas County, Texas. She is the sister of Junior and the aunt of Al III.

11. Defendant Lisa Blue Baron (hereinafter "Lisa Blue") is an attorney who resides in Dallas County, Texas. She formerly represented the Plaintiff.

12. Defendant Charla Aldous is an attorney who resides in Dallas County, Texas. She formerly represented the Plaintiff.

13. Defendant Stephen Malouf is an attorney who resides in Dallas County, Texas. She formerly represented the Plaintiff.

14. Defendant Michael Lynn is an attorney who resides in Dallas County, Texas. He has represented Junior, and his wife is Chief Judge Barbara M.G. Lynn of this Court.

15. Defendant Jeffrey Tillotson is an attorney who resides in Dallas County, Texas. He is Defendant Michael Lynn's law partner.

16. Defendant Donna Stritmatter is an attorney who resides in Dallas County, Texas. She was an assistant district attorney under Defendant Watkins. She personally participated in the burglary of the Plaintiff's home.

17. Defendant Stephanie Martin is an attorney who resides in Dallas County, Texas. She was an assistant district attorney under Defendant Watkins.

18. Defendant Terri Moore is an attorney who resides in Dallas County, Texas. She was the first assistant district attorney under Defendant Watkins.

19. Defendant Hoyt Hoffman is a resident of Dallas County, Texas who worked as an investigator for Defendant Watkins. He personally participated in the burglary of the Plaintiff's home.

20. Defendant Mo Brown is a resident of Dallas County, Texas who worked as an investigator for Defendant Watkins. He personally participated in the burglary of the Plaintiff's home.

21. Defendant Randall Thompson is a resident of Dallas County, Texas who worked as an investigator for Defendant Watkins. He personally participated in the burglary of the Plaintiff's home.

22. Defendant Edith Santos is a resident of Dallas County, Texas who worked as an investigator for Defendant Watkins. She personally participated in the burglary of the Plaintiff's home.

23. Defendant David Picket is the trustee of the Albert Hill Trust. He personally participated in the burglary of the Plaintiff's home.

24. Defendant Albert Hill Trust ("AHT") is a trust that was organized under the laws of the State of Texas in 1935. Al III is a beneficiary of that trust.

25. Defendant Ty Miller is a financial adviser to Junior. He formerly served as the president of Bank One.

26. Defendant Branch Banking and Trust Company ("BB&T") is a national bank

headquartered in Winston Salem, North Carolina.

## FACTS

27. The Plaintiff incorporates by reference the September 21, 2016 Opinion of the Texas Court of Criminal Appeals in *State of Texas v. Albert G. Hill, III*, 499 S.W.3d 853, as if fully set forth herein.

28. The Plaintiff also incorporates by reference ALBERT G. HILL, III'S SUPPLEMENTAL MOTION PURSUANT TO FED. R. CIV. P. 60(B) TO VACATE GLOBAL SETTLEMENT AGREEMENT AND FINAL JUDGMENT IN LIGHT OF THE HONORABLE REED O'CONNOR'S RECUSAL OR, IN THE ALTERNATIVE, FOR LEAVE TO TAKE DISCOVERY ("MOTION TO VACATE"), filed June 28, 2013 in this Court in *Albert G. Hill, III v. Margaret Keliher, et al.*, Case No. 3:07-cv-02020-P-BK (N.D. Tex.), as if fully set forth herein. A true and correct copy is attached as Exhibit 1. The Plaintiff does not seek to relitigate the MOTION TO VACATE, but he includes it to illustrate the political corruption that led him and his wife to move to Atlanta and further led to the burglary of their home in Highland Park. For the reasons set forth in that motion, as well as the fact that Defendant Lynn is married to the chief judge of this Court, the Plaintiff has grave concerns about whether he can get a fair trial in the Northern District of Texas or even in the Fifth Circuit.

29. Information regarding Al III's birth trust was contained in sealed records from his parents' 1979 divorce, and it was stored under lock and key in the Dallas County Courthouse. While Defendant Blue was representing Al III, she informed him that she had obtained the sealed records, but she did not explain how she obtained them. In a February 1, 2010 email to the Plaintiff, Defendant Malouf, and others, Defendant Blue wrote as follows under the subject heading "Pajama time": "*I have the divorce file. I'm taking to the house. It's MINE hahahaha. No one else's hahahahah.*" Defendant Blue never shared the records with Al III even though he

was her client, and a few months later the relationship between Al III and Defendant Blue became adversarial. To this day, Defendant Blue has not shared the records with Al III, nor has she returned them to the courthouse.  The Plaintiff expects to show that Defendant Blue was bribed by Junior and other family members to hide or destroy the records, because those records would show how badly Al III's birth trust was looted by his own family.

30.     Defendants Aldous and Malouf were aware that their law partner, Defendant Blue, was bribing Defendant Watkins in order to gain leverage in the litigation against the Plaintiff, and they advised Blue and ratified and approved her criminal acts on behalf of their law firm.

31.     Acting at the behest of Junior. Defendant Miller sought confidential financial information about the Plaintiff in 2011 from Defendant BB&T.  According to handwritten notes that Defendant Martin took during her tenure as a prosecutor, Defendant Miller sought financial documents from BB&T for the purpose of inducing Defendant Watkins's office to file criminal charges against the Plaintiff. Defendant Miller told BB&T why he was seeking the documents, and without any notice to or permission from the Plaintiff, BB&T produced the Plaintiff's confidential financial information to Defendant Miller, who then turned it over to Defendant Martin. Among the financial records delivered to Defendant Martin were draft loan applications in the Plaintiff's name that included false and misleading information.  The Plaintiff, however, had nothing to do with drafting the applications, never signed them, and certainly never submitted them to BB&T. Nonetheless, Defendant Martin testified that the documents helped persuade prosecutors to file charges against the Plaintiff.

32.     To its credit, BB&T subsequently terminated all of the employees who released the Plaintiff's confidential information.  Nonetheless, BB&T has subsequently and repeatedly

breached its fiduciary obligations to the Plaintiff. BB&T controls trust funds that are held for the benefit of both Junior and the Plaintiff, namely the Margaret Hunt Trust Estate ("MHTE"). The trust allows BB&T to make discretionary distributions to Junior based on the net income of the trust, with the corpus payable to Al III upon the death of Junior. Instead of growing the trust, however, BB&T has steadily distributed <u>all</u> profits to Junior every year even though he has no need for the income.

       33.     Defendants Strittmatter, Hoffman, Brown, Thompson, and Santos personally participated in the burglary of the Plaintiff's home on or about February 21, 2013. Defendant Watkins directed his staff to break into the home, and Defendants Martin and Moore assisted in the scheme. Defendant Picket conspired with the other Defendants and helped induce them to break into the home, and he appeared on site at the time of the burglary. Defendant Picket was acting on behalf of Defendant AHT when he conspired with the other Defendants.

       34.     Several months after the indictment of the Plaintiff, then-Assistant District Attorney Debra Smith was assigned to prosecute the criminal charges. Ms. Smith informed her colleagues and supervisors that the charges against Erin Hill were baseless, and she sought and received permission to dismiss those charges. Ms. Smith further informed her colleagues and supervisors that none of the charges against Al III could be proven except perhaps one, and that case was very weak. Following the dismissal of the charges against Erin Hill, Defendant Picket called Ms. Smith and angrily berated her for dismissing the charges. Around the same time, Defendants Lyda Hill and Alinda Wilkert donated $200,000 to the Dallas County DA's office for the alleged purpose of creating an animal cruelty prosecution unit. In reality, Defendants Hill and Wilkert were creating a pretext for removing Ms. Smith from the criminal case against the Plaintiff. Sure enough, Defendant Watkins transferred Ms. Smith to the new animal cruelty

prosecution unit, then he fired her a short time later on fabricated charges that she mishandled a case. Mr. Watkins then assigned the case against Al III to a prosecutor who was willing to continue the malicious prosecution of Al III.

35. Following the burglary of the Plaintiff's house in 2013, and as a result of all the multi-million dollar judgments against Al III described in Exhibit 1, Defendant Picket took custody of the house on behalf of AHT and a receiver was appointed for purposes of selling the house. During that time, Defendant Picket colluded with Junior to remove hundreds of thousands of dollars worth of furniture and fixtures from the home without notice to the Plaintiff or the receiver, resulting in a lower sales price. Junior was able to purchase the house from the receiver in January 2017 for $3.2 million as a result of the missing furniture. The missing items were then returned to the home and Junior listed it for sale yesterday at $3.9 million.

36. After successfully stealing billions of dollars from Al III as set forth above, Junior and other Defendants have kept trying to bankrupt and destroy the Plaintiff. There are plenty of reasons for their animosity, including the fact that Al III revealed his family's longstanding tax-fraud schemes to the Internal Revenue Service, and now Junior, Lyda Hill, Alinda Wilkert and other relatives will likely lose hundreds of millions of dollars in unpaid taxes, fines, and penalties. Meanwhile, the criminal prosecution of Al III is ongoing, notwithstanding the blistering September 21, 2016 Opinion from the Texas Court of Criminal Appeals. When that case is finally dismissed, Al III intends to bring malicious prosecution and civil rights claims against the Defendants. All of the Defendants have conspired to assist or actively assisted the malicious prosecution of the Plaintiff on bogus criminal charges, and the burglary of the Plaintiff's home was an integral part of that scheme.

## CLAIMS

<u>No official capacity claims</u>

37. Notwithstanding anything else in this complaint, the Plaintiff does <u>not</u> bring any state-law claims against any Defendants for acting in their official capacities as government employees. Instead, the Plaintiff only asserts state-law claims against the Defendants in their individual capacities.

<u>Breach of fiduciary duty</u>

38. All of the Defendants either breached their fiduciary duties to the Plaintiff or conspired with other Defendants to breach their fiduciary duties to the Plaintiff. The Plaintiff therefore brings common-law claims for breach of fiduciary duty.

<u>Tortious interference</u>

39. The Defendants have tortiously interfered with the business relationships of the Plaintiff. The Plaintiff therefore brings common-law claims for tortious interference.

## REQUEST FOR RELIEF

40. The Plaintiffs seek actual and punitive damages, injunctive relief, attorney fees, and all other costs and fees which they may lawfully recover.

THE PLAINTIFF DEMANDS A JURY TRIAL.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
21 Bennett Avenue #62
New York, New York 10033
Tel: (979) 985-5289
Fax: (979) 530-9523
tyclevenger@yahoo.com

**Attorney for Albert G. Hill, III**